Nos. 25-1212, 25-1213

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

NEW ENGLAND FISHERMEN'S STEWARDSHIP
ASSOCIATION,
*Plaintiff-Appellant/Cross-Appellee*,

JERRY LEEMAN,
*Plaintiff*,

v.

HOWARD LUTNICK, in the official capacity as Secretary of
Commerce; NATIONAL MARINE FISHERIES SERVICE;
EMILY MENASHES, in the official capacity as Acting Assistant
Administrator for Fisheries at NMFS; SAMUEL D. RAUCH, III, in
the official capacity as Deputy Assistant Administrator for
Regulatory Programs at NMFS,
*Defendants-Appellees/Cross-Appellants*.

Appeal from the United States District Court for the District of Maine
No. 23-cv-339 (Hon. John A. Woodcock, Jr.)

## FEDERAL DEFENDANTS' REPLY BRIEF

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

THEKLA HANSEN-YOUNG
DANIEL HALAINEN
*Attorneys*
Environment and Natural Resources Div.
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-3329
daniel.j.halainen@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES...........................................................................ii

GLOSSARY .................................................................................................iv

INTRODUCTION..........................................................................................1

STATEMENT ...............................................................................................2

ARGUMENT .................................................................................................4

CONCLUSION..............................................................................................13

CERTIFICATE OF COMPLIANCE .............................................................14

CERTIFICATE OF SERVICE......................................................................15

# TABLE OF AUTHORITIES

## Cases

*Babbitt v. Farm Workers,*
442 U.S. 289 (1979)......................................................................6

*Blum v. Yaretsky,*
457 U.S. 991 (1982).....................................................................5

*California v. Texas,*
593 U.S. 659 (2021)................................................................5, 11

*Carney v. Adams,*
592 U.S. 53 (2020)......................................................................7

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006)..................................................................6, 7

*Freytag v. Comm'r of Internal Revenue,*
501 U.S. 868 (1991)............................................................9, 10, 11

*Gill v. Whitford,*
585 U.S. 48 (2018)......................................................................6

*Lewis v. Casey,*
518 U.S. 343 (1996)..................................................................5, 6

*Lucia v. Sec. & Exch. Comm'n,*
585 U.S. 237 (2018).........................................................3, 9, 10, 11

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992) ................................................................5, 7

*Spokeo, Inc. v. Robins,*
 578 U.S. 330 (2016) ...................................................................5

*Summers v. Earth Island Inst.,*
 555 U.S. 488 (2009) ...................................................................6

*Town of Chester v. Laroe Estates, Inc.,*
 581 U.S. 433 (2017) ...................................................................5

*TransUnion LLC v. Ramirez,*
 594 U.S. 413 (2021) ...................................................................5

*Whitmore v. Arkansas,*
 495 U.S. 149 (1990) ...................................................................7

## Statutes

Appointments Clause, U.S. Const. Art. 2, § 2, cl. 2 ................................3

16 U.S.C. § 1854(c)(3) ..................................................... 1, 3, 4, 13

16 U.S.C. § 1854(h) ........................................................ 2, 3, 4, 13

28 U.S.C. § 530D .........................................................................4

## Regulations

*Framework Adjustment 65 to the Northeast Multispecies Fishery
 Management Plan,* 88 Fed. Reg. 56527 (Aug. 18, 2023) .......................2

# GLOSSARY

| | |
|---|---|
| Assistant Administrator | the Assistant Administrator for Fisheries of the National Oceanic & Atmospheric Administration and head of the National Marine Fisheries Service |
| Framework Adjustment 65 | Framework Adjustment 65 to the Northeast Multispecies Fishery Management Plan |
| New England Council | New England Fishery Management Council, 16 U.S.C. § 1852(a)(1)(A) |
| Magnuson-Stevens Act | Magnuson-Stevens Fishery Conservation & Management Act, 16 U.S.C. §§ 1801 *et seq.* |
| NEFSA | New England Fishermen's Stewardship Association |
| Regional Councils | Regional Fishery Management Councils |
| the Secretary | the Secretary of Commerce |

# INTRODUCTION

Plaintiff New England Fishermen's Stewardship Association (NEFSA) lacks Article III standing to challenge two ancillary provisions of the Magnuson-Stevens Act that the National Marine Fisheries Service did not invoke in issuing the regulations challenged in this case. The Service revised annual catch limits and other requirements for fish stocks subject to its Northeast Multispecies Fishery Management Plan based on different provisions of the Act. NEFSA's objection is limited to the role of the New England Fishery Management Council in advising the agency on these changes, contending that the Council's structure violates the Appointments Clause. The district court largely rejected this argument but identified constitutional defects in two unrelated provisions of the Magnuson-Stevens Act that the court then severed.

NEFSA lacks standing to challenge these two ancillary provisions because they are not implicated by any action the agency took in this case. One of the provisions addresses the New England Council's role in the adoption of limited access systems; no such system is at issue here. *See* 16 U.S.C. § 1854(c)(3). The other provision addresses the Council's role in the repeal of fishery management plans; no such repeal is at issue

here. *See id.* § 1854(h). Regardless of any constitutional defect, neither provision has injured NEFSA in a cognizable way, as required to establish the kind of Article III case or controversy that is necessary to this Court's jurisdiction. NEFSA's general objections to the Magnuson-Stevens Act cannot establish standing to obtain relief from provisions that have caused it no cognizable injury for the Court to redress.

## STATEMENT

As explained in detail in Federal Defendants' principal and response brief, the National Oceanic and Atmospheric Administration's Assistant Administrator for Fisheries, who oversees the National Marine Fisheries Service, promulgated regulations implementing a framework adjustment to the Northeast Multispecies Fishery Management Plan. *Framework Adjustment 65 to the Northeast Multispecies Fishery Management Plan*, 88 Fed. Reg. 56527, 56527–28 (Aug. 18, 2023), https://perma.cc/3ZZH-D5W4. Dissatisfied with these changes, NEFSA sued, but it did not challenge the substance of the framework adjustment as unlawful.

Instead, NEFSA attacked the Magnuson-Stevens Act as unlawfully permitting the New England Council to propose policy changes for the

2

Assistant Administrator's consideration.  NEFSA claimed that the New England Council's members were principal officers requiring appointment in conformance with the Appointments Clause, U.S. Const. Art. 2, § 2, cl. 2, because they exercise significant authority under federal law. *See generally Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245-46 (2018).  The district court concluded that the New England Council's "policy development role" in preparing and proposing the framework adjustment does not offend the Appointments Clause, as the Council is serving an advisory function. (Add. 127-30.)

But the court held that two ancillary provisions of the Magnuson-Stevens Act—16 U.S.C. §§ 1854(c)(3) and (h)—allow the New England Council to exercise significant authority under federal law. (Add. 126-27.) Section 1854(c)(3) provides that the Secretary of Commerce may not adopt a "provision establishing a limited access system" unless the system "is first approved by a majority of the voting members, present and voting, of each appropriate Council." And section 1854(h) provides that the Secretary "may repeal or revoke a fishery management plan" only if "the Council approves the repeal or revocation by a three-quarters majority of the voting members." The district court held that these two

3

provisions provided the New England Council with unreviewable authority to "block certain federal actions" and severed them from the Magnuson-Stevens Act. (Add. 133-36.)

After NEFSA appealed, Federal Defendants pursued this limited cross-appeal. Federal Defendants did not appeal the district court's determination that the two ancillary provisions are constitutionally defective, and the Justice Department provided Congress with the requisite notice. *See* 28 U.S.C. § 530D. Thus, the Court need not reach the merits of NEFSA's Appointments Clause objections to these two provisions. Rather, Federal Defendants maintain that NEFSA lacks standing to obtain the limited relief that the district court granted as to those provisions.

## ARGUMENT

NEFSA lacks standing to challenge 16 U.S.C. §§ 1854(c)(3) and (h) because these provisions are wholly irrelevant to the framework adjustment and implementing regulations at issue. There is no cognizable injury to NEFSA traceable to these provisions for the Court to redress. The district court therefore erred in reaching the merits of NEFSA's claims that these provisions violate the Appointments Clause.

1. To establish the "irreducible constitutional minimum" of Article III standing, NEFSA must demonstrate a concrete and particularized injury in fact that is fairly traceable to the challenged provisions and likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing is not dispensed in gross, *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), and NEFSA must establish standing separately for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017). A plaintiff "who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).

In challenging the constitutionality of aspects of the Magnuson-Stevens Act, NEFSA must show "a concrete, particularized injury fairly traceable to the defendants' conduct in enforcing the *specific* statutory provision [it] attack[s] as unconstitutional." *California v. Texas*, 593 U.S. 659, 680 (2021) (emphasis added). After all, a "plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a *direct* injury

as a result of the statute's operation or enforcement." *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (emphasis added). This requirement is important because any judicial "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (quoting *Lewis*, 518 U.S. at 357), and cannot go beyond redressing the plaintiff's own injury, *see Gill v. Whitford*, 585 U.S. 48, 64-67 (2018); *Summers v. Earth Island Inst.*, 555 U.S. 488, 494-97 (2009).

2.     At bottom, NEFSA seeks relief from Framework Adjustment 65 to the Northeast Multispecies Fishery Management Plan, and the Article III case or controversy concerns the National Marine Fisheries Service's adoption of binding regulations implementing that framework adjustment. Although NEFSA's challenge sounds in the Appointments Clause, Article III does not permit a plaintiff to seek the Court's intervention to conduct a generalized review of the constitutionality of a federal statute untethered from an actual dispute. And NEFSA lacks Article III standing to seek relief from sections 1854(c)(3) and (h), the two ancillary provisions that the district court held unconstitutional and severed.

NEFSA has not alleged a "particularized" injury—i.e., an injury that affects NEFSA "in a personal and individual way," *Lujan*, 504 U.S. at 560 n.1—that can be fairly traced to sections 1854(c)(3) and (h). At best, NEFSA has identified a generalized concern about the constitutionality of these two ancillary provisions of the Magnuson-Stevens Act. But a "general interest common to all members of the public," *Carney v. Adams*, 592 U.S. 53, 59 (2020) (citation omitted), will not suffice to create an Article III case or controversy. Courts cannot "exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing, that 'serv[e] to identify those disputes which are appropriately resolved through the judicial process.'" *DaimlerChrysler*, 547 U.S. at 352-53 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

There is no dispute that sections 1854(c)(3) and (h) are not implicated by Framework Adjustment 65. The regulations set catch limits for groundfish stocks, revise a rebuilding plan for Gulf of Maine cod, and make a temporary modification to accountability measures for Georges Bank cod, among other things. (*See* Fed. Defs. Principal & Resp. Br. at 18-19.) Section 1854(c)(3) addresses the Council's role in the

Secretary's adoption of limited access privilege programs and other limited access systems, and the Secretary did not adopt any limited access privilege program or limited access system. Section 1854(h) addresses the Council's role in the Secretary's repeal of fishery management plans, and the Secretary did not repeal any plan. Yet NEFSA nonetheless maintains that it is entitled to a judicial determination of the constitutionality of these provisions that have no role in Framework Adjustment 65 and no effect on NEFSA. That is inconsistent with basic principles of Article III jurisdiction. NEFSA cannot use its objections to the New England Council's role in proposing a framework adjustment for the northeast multispecies plan to invalidate wholly unrelated provisions of the Magnuson-Stevens Act. In other words, there is a mismatch between NEFSA's alleged injuries and the relief that NEFSA obtained from the district court.

NEFSA counters that its Appointments Clause challenge is not to provisions like 1854(c)(3) and (h) but rather to the structural provisions of the Magnuson-Stevens Act that create the Regional Councils. (NEFSA Resp. & Reply at 12.) But the provisions of the Magnuson-Stevens Act that create the Regional Councils and determine their membership

cannot violate the Appointments Clause in isolation. If the New England Council does not exercise significant authority under federal law, there is no Appointments Clause issue with the structure of the Council. Any Appointments Clause defect must result—at least in part—from statutory provisions conferring authority on Council members that can be exercised only by a duly appointed officer of the United States.

3.    NEFSA relies principally on *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 882 (1991), to attempt to substantiate its Article III standing. But NEFSA overstates *Freytag*, which does not permit NEFSA to evade the basic Article III principles that govern every federal case. And NEFSA misconstrues Federal Defendants' argument that NEFSA's injury must be caused by the two ancillary provisions on which they rely.

In *Freytag*, the Supreme Court concluded that special trial judges of the United States Tax Court were officers. These special trial judges were authorized by statute to aid the Tax Court in its work by handling certain kinds of proceedings. The "authority of those judges depended on the significance of the tax dispute before them." *Lucia*, 585 U.S. at 246. In some relatively minor matters, the special trial judges could hear the

case and enter a final decision for the Tax Court. *Ibid.* In more significant matters, the special trial judges could preside over aspects of the hearing, but only regular Tax Court judges could issue a decision. *Ibid.*

The government argued that the authority to enter a final decision was dispositive. Special trial judges should be considered officers in proceedings where they could enter final decisions, the government explained, but mere employees in proceedings where they could not. *Freytag*, 501 U.S. at 882. Because the special trial judge in the petitioners' case lacked the authority to issue a final decision, there should be no Appointments Clause issue. And the government asserted that the petitioners could not rely on the judges' authority in the other type of proceedings—where those same special trial judges *could* enter final decisions—because the petitioners lacked standing to assert the rights of other taxpayers governed by those other proceedings. *Ibid.*

The Supreme Court concluded that the special trial judges performed "officer" functions in either category of cases because they "exercise[d] significant discretion" in either function. *Ibid.* In presiding over either type of hearing, the special trial judges would "take testimony, conduct trials, rule on the admissibility of evidence, and have

the power to enforce compliance with discovery orders." *Id.* at 881-82; *see also Lucia*, 585 U.S. at 247 (emphasizing this point). The judges thus acted as officers regardless. The Supreme Court went on to observe that, even if the special trial judges had less significant authority in the proceedings where they could not issue a final decision, the special trial judges could not be inferior officers for some purposes and mere employees for others: "If a special trial judge is an inferior officer for purposes of [proceedings where the judge can enter a final decision], he is an inferior officer within the meaning of the Appointments Clause and he must be properly appointed." *Ibid.*

From this passage, NEFSA draws the conclusion that a plaintiff may challenge any provision of a statutory scheme that confers the authority of an officer on a person who has not been duly appointed, regardless whether the offending provision has injured the plaintiff. But *Freytag* reaches no such conclusion; basic principles of Article III standing still apply, *see, e.g., California*, 593 U.S. at 680, and *Freytag* must be reconciled with those principles. Even if the authority conferred by sections 1854(c)(3) and (h) renders New England Council members officers, those provisions are not implicated by Framework Adjustment

11

65, and NEFSA has not identified any direct injury from the challenged action. The New England Council served a purely advisory function in proposing actions that the Assistant Administrator subsequently made an independent decision to adopt. No action taken by the New England Council caused an Appointments Clause injury.

The distinction with *Freytag* is the source of the injury. In *Freytag*, the petitioners were directly injured by the special trial judge's exercise of at least some of the powers that were sufficient to make the special trial judges officers. Here, in contrast, the New England Council's advisory functions are clearly segregable from the narrow and rarely invoked powers under sections 1854(c)(3) and (h), which are irrelevant to the agency action under review. And unlike in *Freytag*, Federal Defendants do not argue that New England Council members should be treated as officers for some purposes and employees for others. Even if provisions of the Magnuson-Stevens Act improperly confer the powers of an officer on New England Council members, NEFSA still must show that those provisions cause a cognizable injury. NEFSA's contrary view is inconsistent with the general rule that standing is not dispensed in gross; NEFSA's asserted harms from the framework adjustment do not

confer free-ranging discretion to challenge every provision of the Magnuson-Stevens Act addressing Regional Councils.

## CONCLUSION

For these reasons, the Court should hold that NEFSA lacks standing to challenge 16 U.S.C. §§ 1854(c)(3) and (h) and reverse the district court's decision to grant relief from these provisions.

Respectfully submitted,

/s/ *Daniel Halainen*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

THEKLA HANSEN-YOUNG
DANIEL HALAINEN
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-3329
daniel.j.halainen@usdoj.gov

December 19, 2025
90-8-8-08667

# CERTIFICATE OF COMPLIANCE

I hereby certify:

1.      This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(B)(i), because, excluding the parts of the document exempted by Rule 32(f), this document contains 2381 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century font.

/s/ *Daniel Halainen*
DANIEL HALAINEN
Counsel for Federal Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, I electronically filed the foregoing reply brief using the court's CM/ECF system, which will notify all registered counsel.

/s/ *Daniel Halainen*
DANIEL HALAINEN

Counsel for Federal Defendants